[Cite as *State v. Miller*, 2026-Ohio-297.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 CA 00062 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas, Case No. 2025 CR 0025 |
| JONATHAN ERIC MILLER | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry: January 30, 2026 |

**BEFORE:** William B. Hoffman; Andrew J. King; David M. Gormley, Appellate Judges

**APPEARANCES:** VICKI L. DE SANTIS, for Plaintiff-Appellee; BERNARD L. HUNT, for Defendant-Appellant.

*King, J.*

{¶ 1}   Defendant-Appellant Jonathan Eric Miller appeals the May 12, 2025 judgment of conviction and sentence of the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

Facts and Procedural History

{¶ 2}   This matter involves two separate events. On October 2, 2024, Miller used a St. Joseph's Federal Credit Union app to remotely deposit a check for $890. The check was allegedly from a loan company. Miller then withdrew the funds.

{¶ 3}   When the check bounced, Tonya Gaters, a collections worker from the credit union contacted Miller. Miller initially stated he did not deposit the check, then later stated he did. With the fine added for the bad check, Miller's account had a negative

balance of $912. Miller advised Gaters he would take care of the negative balance, but needed some time. He asked her to refrain from involving law enforcement. When Miller failed to take care of the matter as promised, Gaters made a police report.

{¶ 4} The second matter took place on December 29, 2024. On that afternoon, Stark County Sheriff's Deputy D'Metre House was dispatched to a Waco Market on Waynesburg Drive Southeast in response to a report of man passed out in his car. Upon arrival, the man was gone. Witnesses advised he had woken up and left, driving east on 17th Street.

{¶ 5} House proceeded in that direction and noticed a utility pole broken in half and dangling from the wires at the intersection of 17th and Trump Ave. House was then dispatched to the intersection of Indian Run and Mapleton on report of a vehicle crash.

{¶ 6} Upon arrival House found Miller unconscious behind the wheel of his running car. The airbag was deployed, the car had heavy front-end damage, a dent on the top, and the rear window was shattered.

{¶ 7} House attempted to rouse Miller by yelling at him from the driver's side of the car, but Miller did not respond. House went to the passenger side, turned off the car, and yelled again. This time Miller stirred. In speaking with Miller, House noted Miller was slurring his words and was lethargic. Miller claimed his blood sugar was low. House called emergency medical technicians to the scene to check him.

{¶ 8} While that was happening, Miller performed an inventory search of Miller's vehicle prior to having it towed. Miller discovered a syringe loaded with heroin and an envelope containing a rocklike substance later determined to be a fentanyl-related compound.

{¶ 9}  Sergeant Chane Cline arrived while Miller was in the ambulance. The paramedics on scene determined Miller did not have any medical condition or injury which would require transport to the hospital. Cline spoke with Miller who admitted to taking Xanex that he got from an unknown person. Miller was concerned there was something else in the Xanex and told Cline he was "F'ed up."

{¶ 10} Deputy Paul Brown also arrived on the scene with Cline. In order to rule out alcohol intoxication, Brown attempted to put Miller through field sobriety tests. Miller nodded off while standing up and was unable to put one foot in front of the other when directed to do so. Testing was therefore terminated.

{¶ 11} On April 23, 2025, the Stark County Grand Jury returned a superseding indictment charging Miller as follows:

{¶ 12} Count one, possession of heroin in violation of R.C. 2925.11(A) and (C)(6), a felony of the fifth degree.

{¶ 13} Count two, possession of a fentanyl-related compound in violation of R.C. 2925.11(A) and (C)(11), a felony of the fifth degree.

{¶ 14} Count three, operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19(A)(2), a misdemeanor of the first degree.

{¶ 15} Count four, forgery in violation of R.C. 2913.31(A)(3), a felony of the fifth degree.

{¶ 16} Count five, passing bad checks in violation of R.C. 2913.11(B), a misdemeanor of the first degree.

{¶ 17} Count six, theft in violation of R.C. 2913.02(A)(2), a misdemeanor of the first degree.

{¶ 18} Miller entered pleas of not guilty to the charges and elected to proceed to a jury trial which took place on April 29, 2025. The State presented four witnesses and elicited the above outlined evidence. Miller testified on his own behalf. He stated he had been the victim of a loan scam in the credit union matter. As to the drug charges, Miller admitted he had taken what he thought was Xanex on December 29, 2024 and admitted he was intoxicated.

{¶ 19} After hearing the evidence and deliberating, the jury acquitted Miller of forgery and passing bad checks, but found him guilty of the balance of the indictment. Miller was subsequently sentenced to 120 days of local incarceration, three years of community control, and restitution in the amount of $912. The trial court reserved a 12-month prison sentence.

{¶ 20} Miller timely filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follows.

I

{¶ 21} "APPELLANT'S CONVICTION OF OPERATING A VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL, DRUGS OR A COMBINATION OF THEM WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE, SO THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR ACQUITTAL ON THAT CHARGE. "

## II

{¶ 22} "APPELLANT'S CONVICTION OF OPERATING A VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL, DRUGS, OR A COMBINATION OF THEM WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## I, II

{¶ 23} Because they are interrelated, we elect to address Miller's assignments of error together. Miller challenges only his conviction for operating a vehicle under the influence of alcohol, drugs or a combination of them (OVI). He argues the trial court should have granted his Crim.R. 29 motion for acquittal on the charge as it was unsupported by sufficient evidence. He additionally argues the conviction is against the manifest weight of the evidence. We disagree.

## Standard of Review

{¶ 24} Crim.R. 29 governs motions for acquittal. Subsection (A) states the following:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 25} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

{¶ 26} Miller's argument raises a question of sufficiency. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979).

{¶ 27} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

Analysis

{¶ 28} Miller was charged with one count of OVI pursuant to R.C. 4511.19(A)(1)(a). That section provides no person shall operate any motor vehicle while under the influence of alcohol, a drug of abuse or a combination of them.

{¶ 29} Miller argues no blood, breath or urine tests were conducted in this matter and that his behavior could have been explained by both his blood sugar and the fact that he had just been in an accident.

{¶ 30} First, the statue does not require testing of blood, breath, or urine to support a conviction for OVI.

{¶ 31} Next, Deputy House was dispatched to the Waco Market in response to Miller passed out behind the wheel of his car before Miller struck the utility pole. Transcript of trial (T.) 125.

{¶ 32} Third, Miller was examined by paramedics at the scene who determined Miller had no medical conditions which required attention or transport to the hospital. T. 145. Additionally, drugs were found in Miller's car and he had track marks – needle puncture wounds – on his arms indicative of intravenous drug use. T. 149. The heroin was found loaded into a syringe and ready to inject. T. 133.

{¶ 33} Finally, Miller himself stated he had taken what he thought was Xanex that got from "some guy." T. 147. He testified "I don't know what was in it. I was pretty messed up." T. 170. He additionally testified his blood sugar was not the root cause but rather did not help matters: "my blood sugar was all out of whack around that time and it did not help anything. . ." T. 172.

{¶ 34} Given the foregoing, we conclude the State produced sufficient evidence to support Miller's OVI conviction and the trial court did not therefore err in overruling his Crim.R. 29 motion for acquittal.

{¶ 35} Miller additionally argues that because the State produced insufficient evidence of OVI, that the jury therefore lost its way in convicting him of OVI. For all of the foregoing reasons, however, we find the jury did not lose its way in convicting Miller of OVI. Miller's manifest weight argument therefore fails.

{¶ 36} The first and second assignments of error are overruled.

{¶ 37} For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas is affirmed.

{¶ 38} Costs to Appellant.

By: King, J.

Hoffman, P.J. and

Gormley, J. concur.